Our final case of the day is Ramirez v. T&H Lemont Mr. Marcatelli Good morning, Your Honors. May I ask the Court to change the time periods to 5 and 5? I mistakenly thought I had more than 10 minutes, Your Honor.  Sure, I apologize. Could I ask the Court if I may reapportion my time, 5 minutes and 5 minutes? I thought I had 15. Whatever you...would you alert him and...okay. All right.  May it please the Court. Counsel, my name is James Marcatelli. I'm the attorney for the plaintiff in this action that was dismissed by the Court for a witness tampering sanction. The plaintiff in this case was discharged from his employment. He filed a claim of employment discrimination that, based on his Hispanic heritage, he was discriminated against by supervising employees at that location. The plaintiff's employment discrimination case was dismissed with prejudice as a sanction for witness tampering. The District Court found that there was clear and convincing evidence provided that proved witness tampering. It's not clear from the order what that evidence is. The District Court's dismissal was an abuse of discretion and not supported by the evidence that was provided by the defendant in this case and rebutted by the plaintiff. Well, here's the problem. Mr. Villagrana clearly said he was offered a bribe, didn't he? I do not believe that's what he said, Your Honor. In his deposition testimony, he had stated that nobody had to tell him what to testify to. He was present. He testified to what he heard, what he saw, and what he felt. And if you look at the circumstances in this particular case, he calls the plaintiff's attorney and says, hey, I want it put in writing what I'm going to get from this case. What it seems as though is he's trying to sell his testimony to the highest purchaser because at the same time that he sent that text message to the plaintiff's attorney, he's got contact with a worker from the defendant corporation telling that individual, hey, tell the president I'm going to change my testimony. Can I get my job back when I straighten out my immigration status? So he's trying to play the field and get what's good for him because in his deposition testimony, he explains how his economic circumstances changed, how he didn't have enough money for rent, how he didn't have enough money for food, and how his brothers, two brothers, were both having heart surgery. He goes on and on explaining. Well, he says in his videotaped deposition, okay, the question is, let me phrase it this way. Was Armando the only person that offered you money for your testimony in this case? Answer, yes. Okay, he was the only one. Answer, yes. Throughout, though, there's discussions that there was no dollar amount ever discussed, a specific dollar amount. Well, that doesn't matter. He's sworn testimony that the plaintiff offered to pay him money for his testimony. Provided after he's subject to criminal sanctions for providing false testimony, as he alleged in his deposition. This individual has a reason to lie and to not tell the truth to protect himself from criminal prosecution at this point. Of course, but that's also why we have district judges. There was an evidentiary hearing. The judge made some findings of fact, and you can prevail, given Rule 52, only if they're clearly erroneous. There were multiple possible interpretations of the evidence. Why is the district judge's view of it clearly erroneous? Because I don't believe that the evidence that was provided by the other two witnesses in this case was at all questionable. Everybody discussed the circumstances and similar circumstances. What I think the defendants were pointing to the court's attention is that originally in December of 2013, plaintiff's attorney filed a motion to withdraw because there was no witnesses to contradict or to win on a summary judgment matter. And we're talking about you, right? Yes. I'm sorry, I apologize. Okay. Maybe you can just make that clear. Okay. I try to leave names out of, you know, my arguments. You were the plaintiff's attorney below, and you were the one who sought to withdraw, and you're the one that this witness sent the text to saying, how much am I going to get? Correct. Correct. So in the interest of transparency, you could just use the first person. Right. And when I received that e-mail, I immediately contacted the opposing counsel, provided a copy of that e-mail. You know, I had spoken with these witnesses on three prior occasions. Now, what's important for the court to distinguish is the fact that two of the witnesses, Velazquez and Villagrana, lived in different states. They had left shortly after the plaintiff's case was filed. Mr. Villagrana went to Texas and Mr. ‑‑ I'm sorry, Mr. Villagrana went to California and Mr. Velazquez went to Texas. They both returned at a similar time, and that's how they were disclosed, after the judge had given four months to try to find last‑ditch effort to provide evidence in the case. And those witnesses were found during that time because they both returned. The same thing happened at the time that Villagrana made that text. He was moving back to California, and Mr. Velazquez was moving back to Texas. You know, this judge asked for all parties to provide their cell phones, which all three parties did. I'm sorry, all three witnesses and the plaintiff. There has not been one particular piece of evidence that's a specific fact, something you can look at, like in the cases that are cited by defense in support of their brief, where you have actual false document or an actual person stating, yes, I was to tell a lie. I was to tell something that was not true. In this case, it's completely different. There is no finding of bad faith or fraud anywhere in the court's order. In fact, the court doesn't even express how it came to the conclusion that there was clear and convincing evidence. What does clear and convincing evidence have to do with this? That is the standard of proof. Where was that standard established? It's in case law. It's an inherent power. Where? It's a sanction. Where was that standard established? I'm asking this because the Supreme Court of the United States has said that there's only one standard in civil litigation, and it doesn't matter what the issue is. The standard is preponderance of the evidence. Every time a court of appeals says there's any other standard, it gets reversed nine to nothing. So where does a clear and convincing evidence standard come from? Substantial case law that's cited in the briefs, Your Honor, and from Judge Zagel himself. I don't think Judge Zagel can contradict the Supreme Court of the United States. But Judge Zagel says. We have a series of cases in the Supreme Court dating back to the early 1970s telling the rest of the federal judiciary, do not use any standard other than preponderance in civil litigation. Last year it reversed the federal circuit unanimously in what seems to me a very curt and exasperated opinion when the federal circuit used a clear and convincing standard. And it said basically, have you been to law school? Why should we be using a standard that the Supreme Court has emphatically told the inferior federal courts not to use? Because this is not a burden of proof in a civil matter. It is a burden of proof in a criminal way. There is nothing criminal about this. Fraud is not. This is a civil suit. It was dismissed. And if you're going to talk about the clear and convincing standard for fraud, the very first case in the Supreme Court's sequence disapproved the use of clear and convincing evidence to show fraud. That's how this line of cases began with the Supreme Court's conclusion that fraud is no different from any other civil issue. But, Judge, it's because of the sanctions that are imposed. It's a punishment. The sanction that was imposed was that this suit was dismissed. It was decided for the defendant. Correct. That's what happens in all civil suits. But it's the plaintiff. The plaintiff wins or the defendant wins. In this case, the defendant won. But that has been described as draconian and to be used sparingly. And that's another issue, Judge. This is a constitutional issue, whether or not my client was discriminated against because of his national heritage and whether he lost his position of employment because of that factor. The standard of review in any employment discrimination case involving sex, race, religion is preponderance of the evidence. And that's just the law. Judge, that's in the case itself. It's not on a motion to dismiss. Do you have... The difference here is, okay, that even if we assume that Mr. Ramirez had a meritorious discrimination claim, Judge Zagel found that he was guilty of witness tampering. And that is a pernicious abuse of the litigation process. And we would have to say that Judge Zagel abused his discretion. And what we have here can certainly be viewed as an attempt to perpetrate a fraud on the court. So, look, it's a very sad case. Your Honor, my time is up. Is there a response? As long as you've been asked a question, you can, of course, respond. Okay. Well, Judge, I think the key term is tampering. I don't think that's what the evidence in this case showed. There's no evidence that, in fact, the testimony that was provided by any of the witnesses was evidence that the plaintiff told them to say. What the facts in this case show is that we have three witnesses who testified to the similar facts that a supervisor would come and would leave at 430. He would harass this particular individual. And one of the reasons is because my client... I don't think you're responding to Judge Rovner's question. You're attempting to argue the merits of the case. I don't believe there's any evidence of fraud or changing the witness's testimony in this case. What that particular issue is to protect. Witness tampering is not to get witnesses before the court. It's to get witnesses before the court to provide false testimony or testimony that is only favorable to the plaintiff. I hope you're not now arguing that it's okay to pay witnesses to provide truthful testimony. That's not what I'm saying, Judge. But I'm trying to distinguish. Otherwise, I'm not sure what you're saying. I think we have your argument, Counsel. Thank you. Ms. Motley. Good morning, Your Honors. May I please support Cynthia Motley for defendant appellee? Counsel? Ms. Motley, did the company conduct an investigation into Mr. Ramirez's allegations of discrimination? Yes, Your Honor. They did. What did they find? Well, this is where it's very important, Your Honor, because it highlights that for seven years, there was no evidence of discrimination or retaliation, particularly, as plaintiff alleged, based on national origin.  Since 2008, when plaintiff began his employment claim, and in his original complaint, plaintiff alleged no facts of discrimination based on national origin. Forward to 2012, when plaintiff was faced with defendant's motion to dismiss, and this is on the docket, and the court's admonishment that it was not enough to allege facts of discrimination, but that plaintiff had to allege that such discrimination was based on national origin. For the first time in his amended complaint, and this is very important to highlight for the court, plaintiff alleged that defendant's employee harassed him by calling him a stupid Mexican and called him a burro, which is Spanish for donkey. Three years later, and after over a dozen depositions, further to highlight Your Honor's question, there was absolutely no evidence to support plaintiff's allegation. So much so that plaintiff's own counsel filed a motion to withdraw in January of 2015. And as Judge Zagel aptly stated in open court, as a last-ditch effort, plaintiff showed up, surfaced with three witnesses who had previously could not be located, and who were plaintiff's co-workers. These witnesses, and I respectfully disagree with some of the factual discussions by appellant, they were deposed all on the same day, which was May 15 of 2015, because these two witnesses were leaving the state of Illinois. And after that date, they again needed to be located. In another very key point, all of them offered the same testimony against defendant on a key point, that defendant's appellee harassed plaintiff once, calling him a burro or a donkey, on separate occasions. And they all testified they had not discussed their testimony with anyone in particular plaintiff. Faced with this new testimony, defendant continued additional discovery and to redepose these witnesses. And after some investigation, Mr. Villagrana was located in California in August of 2015. Coincidentally, around that same time, August 20 of 2015, a text was sent to plaintiff's counsel, and I do quote this because it's also important, it's stated, I want a letter, all in writing, saying what percent I will receive when the case is settled. Not if, not asking for money, just asking what percentage amount defendant or a witness was going to receive. As the court appellee noted, there was an evidentiary hearing that was held by the court. Francisco Hernandez, where the judge, Judge Zagel, personally was able to see and witness the credibility of this witness, and even at that hearing, found it questionable. But even as plaintiff tries to say that they're inconsistent testimony, these two witnesses, including Santiago Villagrana, there's no question. They admitted that the three witnesses met at a restaurant three times and discussed with plaintiff what their testimony would be. And the reason the court also found this Mr. Francisco Hernandez testimony credible was that he was saying that plaintiff didn't offer him money, but that the process server, who served him with a subpoena, came to him and tried to bribe him by offering him his job back at TNH Lamont. So then we had the video deposition of Santiago Villagrana, who clearly was wanting to set the record straight and said some of the things that counsel indicated, was that plaintiff, and I agree, Your Honor, you aptly quoted many things on the record which are absolutely correct. And I quote at Plaintiff's Appendix at page 65, very clearly, was Armando going to give you money? Answer, yes. And it proceeds on to what the court highlighted. Let me put it this way. Was Armando the only person that offered you money for testimony in this case? Yes. And in addition, as Judge Segal noted, plaintiff took advantage and coerced this taking vulnerabilities of plaintiffs, and this is actually very much in line with the case of Cuella v. Peco General, a financial need, and offered him compensation. And so these cases, and to follow to Your Honor's point regarding the preponderance of the evidence, this was actually in a case that plaintiff was citing, which is Tai v. SoftBelly, and quite frankly, in that case it was plaintiff, same situation, Your Honor, when plaintiff cited for the proposition that fraudulent conduct supporting sanction must be proven by clear and convincing evidence, which the court made. And so do you, since the clear and convincing evidence standard is in your brief too, do you have any response to the holding of the Supreme Court that in civil litigation, whether fraud exists is determined by the preponderance of the evidence and not by clear and convincing evidence? I do not, Your Honor. I find it shocking that people seem to be unaware of the consistent decisions of the Supreme Court on this very issue. I agree, Your Honor. Lawyers in this case, by the way, aren't the only people. This seems to come up frequently. And quite frankly, Your Honor, because this is a heightened standard, There is no heightened standard. The Supreme Court has held the opposite.  Agreed, Your Honor. I think you can count on us to follow the Supreme Court rather than 50-year-old district court decisions. Agreed, Your Honor. Or we will try to. And even going with the least of the arguments was even under that standard we would satisfy. But Your Honor, I have to quote, quote, it's also cited by in the Cuella v. Pequa general case, where the court did use the preponderance of the evidence to find that determination. Simply put, the district court's findings were not clear error. There was sufficient evidence to support not just plaintiff's attempt to tamper with witness testimony, but also clear evidence of actual witness tampering in particular by offering money to Santiago Villagrana for his testimony. It was not abuse of discretion to dismiss this case with prejudice. The court's decision was based on its own observation of the witnesses, particularly Francisco Hernandez, and the court's four-year history with this case. So with that, if Your Honors have any other questions, we respectfully ask that the court affirm the district court's decision. Thank you. Thank you very much, Counsel. The case is taken under advisement and the court will be in recess.